Murray, J.
These consolidated appeals[1] involve concurrent adoption and paternity proceedings. In Docket No. 338286, we affirm the trial court's decision in part, but we dismiss as moot the second issue that appellants, the prospective adoptive parents, raise on appeal. We also dismiss as moot the appeal in Docket No. 340203.
I. FACTS AND PROCEDURAL HISTORY
MGR was born on June 5, 2016, and immediately placed by his mother in the custody of appellants through Morning Star Adoption Center. Appellants then filed a petition for direct placement adoption, listing appellee as MGR's putative father.[2] Meanwhile, appellee initiated simultaneous proceedings by filing a notice of intent to claim paternity, and expressing his desire to seek custody of MGR.[3]
On March 24, 2017, the trial court commenced a hearing under MCL 710.39 (§ 39) of the Adoption Code,[4] during which appellee appeared by telephone. However, on April 17, 2017, the trial court entered an order indicating it would take no further action in the adoption case until a resolution was reached in the paternity action. Appellants appealed that order, and a panel of this Court granted their motion for immediate consideration, In re MGR , unpublished order of the Court of Appeals, entered May 19, 2017 (Docket No. 338286), and ordered the trial court to continue the adoption proceedings by scheduling a § 39 hearing, In re MGR , unpublished order of the Court of Appeals, entered May 31, 2017 (Docket No. 338286).
The trial court recommenced the § 39 hearing in the adoption proceedings on August 7, 2017, and issued its opinion and order on September 14, 2017. It concluded that although appellee did not appear in person at the March 24, 2017 hearing, he properly appeared via telephone and expressed his intent to pursue custody if a paternity test determined him to be MGR's father. Further, the trial court determined that appellee was a "do something" father and declined to terminate his parental rights under MCL 710.39(2).
*664 II. ANALYSIS
A. DOCKET NO. 338286
In Docket No. 338286, appellants appeal as of right the trial court's April 17, 2017 order adjourning the adoption proceedings pending resolution of appellee's paternity action. They argue that the court committed clear legal error by failing to terminate appellee's parental rights because he did not personally appear and contest custody during the initial § 39 hearing. Appellants also argue that the trial court erred when it adjourned the adoption proceedings because appellee did not request an adjournment and the good cause necessary to warrant an adjournment did not exist. For the reasons stated in Judge O' BRIEN 's partial dissent, we (1) affirm the trial court's conclusion that appellee properly appeared at the § 39 hearing, and (2) dismiss as moot appellants' argument that the court erred when it adjourned the adoption proceedings.
B. DOCKET NO. 340203
In Docket No. 340203, appellants appeal as of right the trial court's September 14, 2017 opinion and order declining to terminate appellee's parental rights pursuant to MCL 710.39(2). Specifically, appellants assert that the trial court erroneously found that appellee provided substantial and regular support or care to MGR's mother during her pregnancy, such that his parental rights could not be terminated under MCL 710.39(2). This issue is, likewise, moot.
"An issue is moot if an event has occurred that renders it impossible for the court, if it should decide in favor of the party, to grant relief." City of Jackson v. Thompson-McCully Co , LLC, 239 Mich. App. 482, 493, 608 N.W.2d 531 (2000). Generally, appellate courts do not decide moot issues. B P 7 v. Bureau of State Lottery , 231 Mich. App. 356, 359, 586 N.W.2d 117 (1998). Through this appeal, appellants are seeking reversal of the trial court's application of MCL 710.39(2), based on the argument that under the facts appellee was a "do nothing" father, thus warranting application of MCL 710.39(1), rather than MCL 710.39(2). If they were to succeed with this argument, the trial court would be required on remand to apply the termination provisions of MCL 710.39(1). But, as explained below, an order of filiation entered after the order on appeal "renders it impossible for the court, if it should decide in favor of [appellants], to grant relief" under that statutory provision. City of Jackson , 239 Mich. App. at 493, 608 N.W.2d 531. The appeal is therefore moot.
After the trial court entered its opinion and order declining to terminate appellee's parental rights under MCL 710.39(2), the same court entered an order of filiation in the separate paternity action, declaring appellee to be MGR's biological and, therefore, legal father. Accordingly, appellee is no longer a putative father, and neither we nor the trial court can grant relief under MCL 710.39(1) and (2), which both exclusively address termination of a putative father's rights during the course of an adoption. Because appellee is now considered a legal parent, his rights can only be terminated pursuant to MCL 712A.19b. See In re MKK , 286 Mich. App. 546, 558, 781 N.W.2d 132 (2009) ("Once a man perfects his legal paternity, he is considered a 'parent,' with all the attendant rights and responsibilities, and termination of his parental rights can generally only be accomplished in cases of neglect or abuse under MCL 712A.19b."). A remand to address statutory provisions that pertain to putative fathers, when there is no longer a putative father in this case, would provide no proper legal remedy at all.
*665 Appellants argue that certain provisions of the Adoption Code ( MCL 710.36, MCL 710.37, and MCL 710.39 ) address termination of a legal father's parental rights, so that an order of filiation does not render moot the proceedings under the Adoption Code. This argument focuses on the wrong issue. Whether these other sections can affect a legal father's rights under the Adoption Code has no impact on whether, on remand, a remedy to appellants would exist under MCL 710.39 in light of the order of filiation. The answer to that question solely involves the scope of § 39. And, as we have previously stated, when it comes to terminating the parental rights of a legal father so that an adoption can move forward, the provisions of § 39 simply do not apply. In re MKK , 286 Mich. App. at 558, 781 N.W.2d 132.[5]
For a couple of reasons, we disagree with appellants' argument that the order of filiation cannot control the disposition of this adoption appeal because proceedings under the Adoption Code routinely take precedence over separate paternity actions. See, generally, MCL 710.21a. For one, that argument is contradicted by this Court's decision in In re MKK , 286 Mich.App. 546, 781 N.W.2d 132. Additionally, although the Legislature has indicated that adoption proceedings should generally have the highest priority on court dockets "so as to provide for their earliest practicable disposition," MCL 710.25(1) (emphasis added), no statutory provision has been pointed out to us mandating that adoption proceedings must always be completed before a determination is made in a parallel paternity proceeding. In fact, MCL 710.25(2) creates an exception to the general rule, allowing for the adjournment of adoption proceedings upon a showing of good cause. In re MKK , 286 Mich.App. at 562, 781 N.W.2d 132. The In re MKK Court held that good cause to adjourn an adoption proceeding can be established by the existence of a timely paternity action:
[I]n cases ... where there is no doubt that respondent is the biological father, he has filed a paternity action without unreasonable delay, and there is no direct evidence that he filed the action simply to thwart the adoption proceedings, there is good cause for the court to stay the adoption proceedings and determine whether the putative father is the legal father, with all the attendant rights and responsibilities of that status. [ Id .]
Importantly, the Court also acknowledged that
while a stated purpose of the Adoption Code is to "safeguard and promote the best interests of each adoptee," upholding the rights of the adoptee as paramount to those of any other, see MCL 710.21a(b), the general presumption followed by courts of this state is that the best interests of a child are served by awarding custody to the natural parent or parents, see, e.g., Hunter v. Hunter , 484 Mich. 247, 279, 771 N.W.2d 694 (2009) (holding that "the established custodial environment presumption in MCL 722.27 [1][c] must yield to the parental presumption in MCL 722.25 [1]"). Thus, giving a paternity action priority over an adoption proceeding does not necessarily conflict with protecting the best interests of the child. [ In re MKK , 286 Mich. App. at 562-563, 781 N.W.2d 132 (bracketed material in original).]
*666 Although appellants disagree with the conclusion set forth in In re MKK , it is a binding decision that has not been rejected by this Court or the Michigan Supreme Court.[6]
We also do not share appellants' concern that trial courts will purposefully insulate their adoption decisions by entering a subsequent order of filiation that, under our decision today, would moot the appeal of an earlier adoption decision. Rather, we employ the well-earned presumption that trial courts act properly in accord with their constitutional duties. People v.Purcell , 174 Mich. App. 126, 129, 435 N.W.2d 782 (1989). Nothing in the record before us suggests that the trial court acted improperly by deciding the paternity case once it had resolved the § 39 issue.[7]
Based on the foregoing, in Docket No. 338286, we affirm that portion of the trial court's April 17, 2017 opinion and order concluding that appellee properly appeared via telephone at the § 39 hearing, but we dismiss as moot appellants' argument that the trial court erred when it adjourned the adoption proceedings. We also dismiss as moot the appeal in Docket No. 340203.
O'Brien, J (concurring in part and dissenting in part).
In Docket No. 338286, appellants, the adoptive parents, appeal as of right the April 17, 2017 order adjourning proceedings under the Adoption Code, MCL 710.21 et seq ., pending the resolution of the paternity action initiated by appellee, the putative father. On appeal, appellants present two issues. First, appellants argue that the trial court committed clear legal error by failing to terminate the putative father's parental rights when he failed to appear and contest custody during a hearing scheduled pursuant to MCL 710.39(1) (the § 39 hearing). Second, appellants argue that the trial court should not have adjourned the adoption proceedings because the putative father did not request an adjournment and there was no good cause to warrant an adjournment. In Docket No. 340203, appellants appeal as of right the September 14, 2017 opinion and order determining that the putative father's parental rights should not be terminated under MCL 710.39(2). Appellants ask this Court to determine whether the trial court erroneously found that the putative father provided substantial and regular support or care to the birth mother during her pregnancy such that the putative father was subject to MCL 710.39(1), not MCL 710.39(2). In Docket No. 338286, for the reasons stated in this opinion, I agree with the majority that the putative father "appeared" at the § 39 hearing and that the other issue raised is moot. However, in Docket No. 340203, I would reverse *667 the trial court's decision and remand for the trial court to evaluate whether the putative father's parental rights should be terminated under MCL 710.39(1). Therefore, I dissent from that portion of the majority's opinion.
I. DOCKET NO. 338286
In Docket No. 338286, appellants argue that the trial court erroneously declined to terminate the putative father's parental rights at the § 39 hearing when the putative father failed to personally appear. Appellants also argue that the trial court abused its discretion by adjourning the adoption proceedings pending resolution of the paternity action.
A. PUTATIVE FATHER'S PARENTAL RIGHTS
With respect to appellants' argument that the putative father failed to appear at the § 39 hearing as required by MCL 710.39,[1] appellant's argument is unpersuasive. It is undisputed that the putative father did not personally appear for the § 39 hearing. However, his counsel was present. When the putative father's counsel indicated to the trial court that he did not know where the putative father was and that the putative father had been nonresponsive as of late, the trial judge took it upon herself to call the putative father in order to protect his "constitutional rights with regard to [t]his contested hearing."[2]
MCR 2.117(B)(1) states that:
[a]n attorney may appear by an act indicating that the attorney represents a party in the action. An appearance by an attorney for a party is deemed an appearance by the party. Unless a particular rule indicates otherwise, any act required to be performed by a party may be performed by the attorney representing the party.
The putative father's counsel identified himself at the § 39 hearing as representing *668 the putative father, which satisfies MCR 2.117(B)(1). When looking solely at the plain language of MCL 710.39(1), nothing in that statute specifically requires a putative father to be present to contest custody; it only requires that a putative father appear and contest custody. MCL 710.39(1). When a statute's language is unambiguous, as is the case here, this Court is required to " 'give the words their plain meaning and apply the statute as written.' " In re MJG , 320 Mich. App. 310, 321, 906 N.W.2d 815 (2017), quoting Rowland v. Washtenaw Co. Rd. Comm. , 477 Mich. 197, 202, 731 N.W.2d 41 (2007). Therefore, although the putative father's failure to physically appear at the § 39 hearing calls into question his sincerity in contesting the adoption proceedings, the appearance of the putative father's counsel at the § 39 hearing qualifies as an appearance by the putative father pursuant to MCR 2.117(B)(1).[3]
B. ADJOURNMENT OF ADOPTION PROCEEDINGS
Appellants also argue that the trial court abused its discretion by sua sponte adjourning the adoption proceedings pending a resolution of the paternity action initiated by the putative father. The Adoption Code provides that "[a]n adjournment or continuance of a proceeding under this chapter shall not be granted without a showing of good cause." MCL 710.25(2). Generally, adoption proceedings should be resolved as quickly as possible, and should be given priority on a trial court's docket. In re MKK , 286 Mich. App. at 562, 781 N.W.2d 132, citing MCL 710.25(1).
Here, the trial court may have abused its discretion by adjourning the adoption proceedings, particularly given that this case had been pending for 10 months at the time of the adjournment, that the putative father lacked initiative in seeking a DNA test, and that overall, he lacked involvement in the child's life. However, this issue is moot. An issue is moot and generally will not be reviewed if this Court can no longer fashion a remedy for the alleged error. Silich v. Rongers , 302 Mich. App. 137, 151-152, 840 N.W.2d 1 (2013).
After filing their claim of appeal, appellants filed two motions in this Court: a motion for immediate consideration[4] and a motion for peremptory reversal.[5] We granted appellants' motion for immediate consideration, but denied the motion for peremptory reversal. We also ordered the trial court to "grant no further adjournments of the adoption proceedings after June 6, 2017, and [to] schedule a hearing pursuant to MCL 710.39 of the Adoption Code forthwith."[6]
*669 Subsequently, a § 39 hearing began on July 14, 2017, but the parties were unable to conclude the hearing on that date. As a result, the trial court further adjourned the hearing until September 29, 2017. Appellants moved to enforce the May 31, 2017 order, and we ordered the trial court to "re-commence and conclude [the § 39 hearing] within 14 days of the date of entry of this order [July 25, 2017].''[7] The § 39 hearing restarted on August 7, 2017, and concluded on August 8, 2017. Appellants' appeal focuses on whether it was an abuse of the trial court's discretion to adjourn a hearing pursuant to MCL 710.39 pending the outcome of the putative father's paternity action, but that hearing was commenced and concluded upon this Court's orders; therefore, ''this Court can no longer fashion a remedy for the alleged error," and the issue is moot. Silich , 302 Mich. App. at 151-152, 840 N.W.2d 1.
II. DOCKET NO. 340203
In Docket No. 340203, appellants argue that the trial court legally and factually erred by finding that the putative father qualified as a "do something" father and then determining whether his parental rights should be terminated under MCL 710.39(2).
As the majority points out, because the trial court issued its opinion and order finding that the putative father was a "do something" father, the trial court entered an order of filiation with regard to the putative father and the minor child. Relying on In re LMB[8] an unpublished case from a panel of this Court, the trial court apparently believed that it was obligated to enter the order of filiation. However, in LMB , unlike in the instant case, the order of filiation was entered by an entirely separate trial court that was apparently unaware of the adoption proceedings. Moreover, the LMB opinion was later vacated by the Michigan Supreme Court in light of this Court's subsequent order in an appeal from a separate paternity action. In that subsequent order, a panel of this Court reversed the trial court's order denying the adoptive parents' motion for a stay pending the adoption appeal and granted the stay.[9] In this case, the paternity and adoption cases were before the same trial court and, given the public record of the paternity action, it appears that appellants repeatedly attempted to stay those proceedings until this appeal was resolved. However, for whatever reason, the trial court denied appellants' motions.[10] In so doing, it appears that the trial court entered an order that it knew would effectively prevent appellate review of its decision rather than grant the stay and allow review. Under these circumstances, I would not hold this issue moot. And for the reasons stated herein, I would remand to the trial court to conduct a § 39 hearing under the proper standard of review.
A trial court's determination of whether MCL 710.39(1) or MCL 710.39(2) applies *670 to a putative father is a question of law that this Court reviews de novo. In re RFF , 242 Mich. App. 188, 195, 617 N.W.2d 745 (2000). A trial court's factual findings are reviewed for clear error. In re BKD , 246 Mich. App. 212, 215, 631 N.W.2d 353 (2001). A trial court has clearly erred if this Court is left with a definite and firm conviction that a mistake was made. Id .
MCL 710.39 separates putative fathers into two distinct classes: "do nothing" fathers and "do something" fathers. MCL 710.39(1) and (2), respectively. If a putative father is found to be a "do something" father, his parental rights to the child may only be terminated under MCL 710.51(6) or MCL 712A.2. MCL 710.39(2). A lesser standard applies when terminating the parental rights of a "do nothing" father; the trial court need only inquire into his fitness as a parent and his ability to properly care for the child and then determine "whether the best interests of the child will be served by granting custody to him." MCL 710.39(1). To qualify as a "do something" father, a putative father must demonstrate that he has either (1) established a custodial relationship with the child or (2) provided substantial and regular support or care, within his ability to do so, for the mother during her pregnancy, or for either the mother or child after the child's birth. MCL 710.39(2).
During the § 39 hearing in this case, the putative father testified that the birth mother became pregnant with the minor child in October 2015. In November 2015, the putative father rented an apartment for them to live in. The birth mother moved out of the apartment in February 2016, four months into her pregnancy, after which the putative father only gave her financial assistance on one occasion. Additionally, the putative father only recalled taking the birth mother to Planned Parenthood once for prenatal care.
After leaving the apartment, the birth mother ceased all communications with the putative father. However, the putative father testified that he was able to make contact with members of her family on "multiple occasions." Specifically, the putative father was in contact with the birth mother's sister, two brothers, and mother. In March 2016, the birth mother threatened to seek a personal protection order (PPO) against the putative father if he did not stop attempting to contact her directly, but she never followed through on the threat.
In a written opinion after the § 39 hearing, the trial court found that the putative father was a "do something" father because he had provided "substantial and regular support or care" within his abilities to the birth mother during her pregnancy, "despite the legal obstacles and hurdles placed upon him by [the birth mother's counsel and by the birth mother]." Specifically, the trial court cited the birth mother's threat to file a PPO against the putative father as evidence of the birth mother's having "impeded" the putative father's ability to provide regular and substantial support during her pregnancy.
The trial court's opinion clearly contains numerous factual and legal errors. The putative father was not a "do something" father as contemplated by MCL 710.39(2), and the trial court's factual finding that the birth mother impeded the putative father's efforts to provide substantial and regular support and care during her pregnancy, as required under MCL 710.39(2), was clearly erroneous.
In 1998, the Legislature amended MCL 710.39 and increased the supportive element of MCL 710.39(2) from "support or care" to "substantial and regular support or care." MCL 710.39(2), as amended by 1998 PA 94. The plain language of MCL 710.39(2), as amended, requires substantial *671 and regular support or care, which suggests that the Legislature intended for putative fathers to provide support or care throughout a birth mother's pregnancy.
This Court previously concluded that a putative father's desire or effort to be involved in a birth mother's pregnancy ''does not constitute substantial and regular support or care for the purposes of [ MCL 710.39(2) ].'' In re RFF , 242 Mich. App. at 201, 617 N.W.2d 745. This Court also found that merely filing a notice of intent to claim paternity in an adoption action does not constitute support or care under MCL 710.39(2). Id . In sum, this Court has made it clear that, in order to be considered a "do something" father under MCL 710.39(2), a putative father must actually do something on a regular basis.
The record is clear that the birth mother moved out of the couple's apartment during the fourth month of her pregnancy. Although the putative father had been supporting the birth mother while they were living together, the putative father only provided financial assistance on one occasion after the birth mother moved out. In March 2016, the birth mother told the putative father that she was unwilling to allow him to have custody of their child, and that she was considering adoption. The two had no further communication until June or July of 2016, after the minor child was born and placed with appellants.
Although the birth mother threatened to file a PPO against the putative father, she never did. Therefore, during the last five months of the birth mother's pregnancy, the putative father could have sent money or necessities to her directly, or through other channels such as the birth mother's family with whom the putative father had remained in contact. There is no evidence to suggest that the putative father was threatened with a PPO if he continued to communicate with the birth mother's family. Further, the putative father certainly had the financial means to provide at least some regular support to the birth mother during her pregnancy given the putative father's testimony that he was employed until shortly after the minor child's birth. The putative father's testimony established that he had the means to provide regular support or care, yet he chose not to do so. Given the foregoing, the trial court's finding that the birth mother impeded the putative father's ability to provide substantial and regular support or care during her pregnancy is wholly unsupported by the record and was clearly erroneous.
The putative father also failed to provide substantial care or support to the minor child after the child's birth. The putative father testified that after the minor child was born, he purchased clothing, diapers, and other necessities for the minor child, and he even set up a "GoFundMe page" to help pay for his attorney fees and things that the minor child would need. However, the putative father never sent those necessities to the birth mother, or to the adoptive parents, which he could have done through the adoption agency with whom the putative father had been in contact.
It is also noteworthy that when the putative father was told that he could have supervised visits with the minor child, he declined because he did not want "strangers staring down at [him] while-[he got] to know [his] son[.]" The putative father further testified that he was also offered an opportunity to meet the minor child's adoptive family "somewhere in the public [to] allow [him] a couple of hours with [his] son," but he declined that invitation as well. Based on the foregoing, the trial court clearly erred by concluding that the putative father provided substantial and regular support or care within his abilities to the birth mother or to the minor child *672 after the minor child's birth, as contemplated by MCL 710.39(2).
The trial court also committed legal error when it considered the putative father's actions in bringing legal proceedings as "support" for the purposes of MCL 710.39(2). The trial court found that the putative father was an "active and vigilant participant in both the paternity and adoption actions..., despite the legal obstacles and hurdles" placed in his way by the birth mother and her counsel, i.e., the birth mother's threat of a PPO. The trial court opined that the putative father's participation in the legal proceedings "demonstrate[d] [that] he provided substantial and regular care within his ability...." However, as previously noted, merely filing a notice of intent to claim paternity in an adoption action does not constitute regular support or care under MCL 710.39(2). In re RFF , 242 Mich. App. at 201, 617 N.W.2d 745. Consequently, the putative father's participation in the paternity action and the adoption proceedings should not have been considered when determining whether the putative father fell under MCL 710.39(1) or (2). The trial court's reasoning was legally erroneous.
Additionally, the trial court's ruling in this regard was factually erroneous. At the March 24, 2017 hearing, the putative father's own counsel informed the trial court that he did not know where the putative father was. The putative father's counsel informed the trial court that in the month preceding that hearing, the putative father had not responded to any letters or phone calls regarding this matter, and that the putative father had not "shown a lot of interest in progressing with his case recently." The trial court's factual determination that the putative father had been an "active and vigilant participant" during these proceedings was clearly erroneous.
The trial court also committed legal error by relying on caselaw predating the amendment of MCL 710.39. In issuing its opinion, the trial court referred to In re Dawson , 232 Mich. App. 690, 694, 591 N.W.2d 433 (1998), which lists several factors used by trial courts prior to the amendment of MCL 710.39 to evaluate whether a putative father came under MCL 710.39(1) or MCL 710.39(2). The trial court acknowledged that much of the caselaw predating the amendment of MCL 710.39 was now "irrelevant," but it went on to opine that the "factors [enumerated in In re Dawson ] remain instructive." Specifically, the trial court relied on language from In re Dawson in which trial courts were instructed to consider whether "the mother impeded the father's efforts to provide her with support...." In re Dawson , 232 Mich. App. at 694, 591 N.W.2d 433.
Given that MCL 710.39(2) has been amended to include a more stringent support obligation since this Court's decision in In re Dawson , those considerations, including whether the birth mother "impeded the father's efforts to provide her with support," are now obsolete. As discussed, to be considered a "do something" father under MCL 710.39(2), a putative father must have actually done something on a regular basis. Here, the putative father did nothing during the last five months of the birth mother's pregnancy. That the trial court considered the factors from Dawson constituted legal error.
On the basis of the foregoing, I would conclude that the trial court improperly assessed whether the putative father's parental rights should be terminated under MCL 710.39(2), and I would remand to the trial court to determine whether his rights should be terminated under the proper standard found in MCL 710.39(1).
For these reasons, I concur with the majority in Docket No. 338286, but respectfully *673 dissent from the majority's decision in Docket No. 340203.

In re MGR , unpublished order of the Court of Appeals, entered October 18, 2017 (Docket Nos. 338286 and 340203).

Neither the Adoption Code, in MCL 710.22, nor the Paternity Act, in MCL 722.711, defines the term "putative father." However, this Court defined ''putative father'' for purposes of the Paternity Act as "a man reputed, supposed, or alleged to be the biological father of a child." Girard v. Wagenmaker , 173 Mich. App. 735, 740, 434 N.W.2d 227 (1988), rev'd on other grounds 437 Mich. 231, 470 N.W.2d 372 (1991). We see no reason why this same definition should not apply to that term under the Adoption Code.

The paternity action was initially filed in Macomb County, but was later moved to Oakland County.

MCL 710.21 et seq .

Although MCL 710.36(1) authorizes trial courts to conduct hearings to determine the identity of a child's father when the release or consent of the natural father cannot be obtained, appellants appear to ignore the portion of MCL 710.36(1) that permits the court, as part of the hearing, to terminate the rights of a father as provided in §§ 37 and 39 of the Adoption Code. MCL 710.37 and MCL 710.39 apply only to putative fathers, and as provided above, appellee is no longer a putative father. He is MGR's biological and legal father.

The recent Supreme Court order in In re LMB , 501 Mich. 965, 905 N.W.2d 598 (2018), a case likewise involving separate adoption and paternity actions, does not affect our decision. There, subsequent to a decision of this Court dismissing as moot the prospective adoptive parents' appeal from the trial court's order declining to terminate the respondent father's parental rights pursuant to MCL 710.39(1), In re LMB , unpublished per curiam opinion of the Court of Appeals, issued September 14, 2017 (Docket No. 338169), pp 1-2, a separate panel of this Court peremptorily reversed a different trial court's refusal to stay the putative father's paternity action pending final resolution of the adoption case, Sarna v. Healy , unpublished order of the Court of Appeals, entered December 18, 2017 (Docket No. 341211). The same procedural circumstances do not exist in this case.

Interestingly, appellants' theory could only occur if the adoption issue was decided first, something appellants contend should occur in every case.

MCL 710.39 states, in pertinent part:
(1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.
(2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with [MCL 710.51(6) ] or [MCL 712.2 ].

Notably, the trial court's belief that the putative father had constitutional rights regarding the hearing was erroneous. The putative father was not the minor child's legal parent because he had not perfected paternity, and " 'the mere existence of a biological link does not necessarily merit constitutional protection.' " In re MKK , 286 Mich. App. 546, 561, 781 N.W.2d 132 (2009), quoting Bay Co. Prosecutor v. Nugent , 276 Mich. App. 183, 193, 740 N.W.2d 678 (2007) (quotation marks and citation omitted). "Further, 'there has yet to be any determination in this state that a putative father of a child born out of wedlock, without a court determination of paternity, has a protected liberty interest with respect to the child he claims as his own.' " In re MKK , 286 Mich. App. at 561, 781 N.W.2d 132, quoting Nugent , 276 Mich. App. at 193, 740 N.W.2d 678. An exception exists ''when a putative father has established a custodial or supportive relationship under MCL 710.39(2),'' which the putative father had not done here. In re MKK , 286 Mich. App. at 561, 781 N.W.2d 132. Accordingly, the putative father had no constitutional rights for the trial court to protect.

Also of note, the trial court was easily able to reach the putative father via telephone. On that telephone call, the putative father made it clear that he had notice of the hearing and had intended to be there, but he was not able to make it due to a lack of transportation. Additionally, the putative father was very clear that if a DNA test established that he was the biological father of the minor child, he would be contesting custody.
Appellants argue that, because the putative father qualified the circumstances under which he would contest custody-i.e., only if the minor child was his biological child-the putative father does not satisfy the requirements of MCL 710.39(1). However, appellants' argument fails because the putative father's intent to contest custody was clear. The trial court did not clearly err by declining to terminate the putative father's parental rights.

In re MGR , unpublished order of the Court of Appeals, entered May 19, 2017 (Docket No. 338286).

In re MGR , unpublished order of the Court of Appeals, entered May 31, 2017 (Docket No. 338286).

Id .

In re MGR , unpublished order of the Court of Appeals, entered July 25, 2017 (Docket No. 338286).

In re LMB , unpublished per curiam opinion of the Court of Appeals, issued September 14, 2017 (Docket No. 338169), vacated --- Mich. ---- (2017) (Docket No. 156674).

Sarna v. Healy , unpublished order of the Court of Appeals, entered December 18, 2017 (Docket No. 341211).

The trial court's decision to deny appellants' motion to stay is now pending in a separate appeal before this Court. As in LMB , this Court's decision in the separate appeal could result in the Supreme Court's vacating the majority's decision in this case. This is the second time this Court has been confronted with this situation in the past six months. Guidance from the Supreme Court could be of great benefit in the future to the trial courts presiding over similar cases.