*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* AGD, Minor.

FOR PUBLICATION
March 14, 2019
9:05 a.m.

No. 345717
Genesee Circuit Court
Family Division
LC No. 18-017888-AY

Before: BORRELLO, P.J., and SWARTZLE and CAMERON, JJ.

CAMERON, J.

This dispute requires us to interpret the stepparent adoption statute, MCL 710.51(6), and determine whether a parent in all cases must have custody according to a court order before a court can terminate the parental rights of the other parent. Petitioners are the mother and stepfather of the minor child, and they appeal the trial court's order denying their request to terminate the parental rights of respondent, the minor child's legal father, under MCL 710.51(6). On appeal, petitioners argue the trial court erred in its interpretation of MCL 710.51(6) that petitioner mother was required to have custody of her child according to a court order before seeking termination of respondent's parental rights. We disagree and therefore affirm the decision of the trial court.

## I. FACTUAL AND LEGAL BACKGROUND

Petitioner was unmarried when her child was born in 2015. Respondent is the child's legal father by way of an affidavit of parentage. According to respondent, he has not seen the child since 2015—when the child was eight months old. Respondent has a history of heroin abuse, and between June 2016 and June 2017, he was in residential treatment for his addiction. While respondent's work history is unclear from the record, he did have a job while in "sober living" and had not used drugs for the 19 months after his child was born.

In April 2018, respondent filed a complaint seeking to reestablish contact with his child. Respondent requested parenting time and a child-custody determination, and he also requested the entry of a child-support order. Two months later, petitioners filed their petition seeking consent from the court for the child's stepfather to adopt the child. Petitioners also sought termination of respondent's parental rights. In her supplemental petition and affidavit to

-1-

terminate respondent's parental rights, petitioner mother represented that she had custody of her child according to a court order.[1] At a September 2018 hearing, however, the trial court found that neither a child support order nor a custody order existed. Based on that evidence, the trial court held "that as a matter of law," petitioners had "failed to meet the threshold procedural requirement of MCL 710.51(6)." The trial court noted that MCL 710.51(6) had been amended by 2016 PA 143[2] and held that, based on the plain meaning expressed by the *current* statutory language, the child's mother was not entitled to relief by petitioning for the termination of respondent's parental rights because she did not have "custody of the child according to a court order." The trial court concluded that even if the parents were unmarried, and the father acknowledged paternity or was a putative father according to MCL 710.39, petitioner mother was required to have custody "according to a court order" before seeking stepparent adoption. MCL 710.51(6).

The trial court also held that, even if petitioner mother *had* been entitled to file her petition under MCL 710.51(6), the trial court nevertheless would have denied the requested relief, reasoning that petitioners had "failed to demonstrate by clear and convincing [evidence] that termination was warranted" or that "it would be in the best interest of the child[.]" The trial court further reasoned that, because respondent had filed a complaint seeking parenting time and the establishment of a child support order before petitioners had filed their petition under MCL 710.51(6), respondent expressed his desire to have contact with the minor child and provide support for the child. Therefore, the court reasoned, it would be premature to terminate respondent's parental rights under MCL 710.51(6) *before* a ruling regarding custody, parenting time, and child support.

On appeal, petitioners argue that the trial court erred by (1) interpreting MCL 710.51(6) as requiring that the petitioning parent have custody of the minor child "according to a court order" in *all* cases, even if the biological parents were never married; (2) finding that petitioners had failed to present clear and convincing evidence to satisfy all of the required elements for termination under MCL 710.51(6); (3) concluding that the best interests of the minor child were not relevant as part of the inquiry under MCL 710.51(6); and (4) finding that petitioners had

---

[1] Petitioner mother checked a box on the SCAO form indicating she had custody according to a court order.

[2] The trial court concluded that the recent amendment to MCL 710.51(6) superseded *In re AJR*, 496 Mich 346; 852 NW2d 760 (2014) (interpreting MCL 710.51(6), as amended by 1996 PA 409, and holding that "when consent to stepparent adoption has not or cannot be obtained, petitioners must follow the statutory procedures to obtain *sole* legal custody before seeking termination of the respondent-parent's parental rights under" former MCL 710.51(6)) (emphasis added). In reaching its conclusion, the court observed that legislative history materials suggested that 2016 PA 143 had been enacted in direct reaction to our Supreme Court's decision in *In re AJR*.

failed to present clear and convincing evidence that termination of respondent's parental rights was in the minor child's best interests.

## II. STANDARD OF REVIEW

Questions of statutory interpretation are legal in nature, and thus they are reviewed de novo. *In re Hill*, 221 Mich App 683, 689; 562 NW2d 254 (1997). A trial court's factual findings during a proceeding to terminate parental rights under the Adoption Code are reviewed for clear error. *Id*. at 691-692. "A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. at 692.

## III. ANALYSIS

Petitioners first argue that the trial court improperly interpreted and applied MCL 710.51(6) of the Adoption Code. We disagree.

### A. VERTICAL STARE DECISIS

As a preliminary matter, the parties have not addressed an essential threshold question of whether this Court is free to announce a new construction of MCL 710.51(6) in light of our Supreme Court's decision in *In re AJR*, 496 Mich 346; 852 NW2d 760 (2014), and the doctrine of vertical stare decisis.

MCL 710.51(6), as amended by 2016 PA 143, provides:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if a parent having custody of the child according to a court order subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition. A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered.

> (b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

The doctrine of vertical stare decisis, as defined by *Black's Law Dictionary* (10th ed), is "[t]he doctrine that a court must strictly follow the decisions handed down by higher courts within the same jurisdiction." As the trial court correctly noted, in *In re AJR*, our Supreme Court interpreted the language of *former* MCL 710.51(6), as amended by 1996 PA 409, and held that

under that provision, "when consent to stepparent adoption has not or cannot be obtained, petitioners must follow the statutory procedures to obtain *sole* legal custody before seeking termination of the respondent-parent's parental rights." *In re AJR*, 496 Mich at 356 (emphasis added). Because MCL 710.51(6) was subsequently amended by 2016 PA 143, petitioners now ask this Court to disregard *In re AJR* and announce a new construction of MCL 710.51(6) based on the provision's amended wording, which differs significantly from the language that our Supreme Court relied upon when interpreting former MCL 710.51(6) in *In re AJR*. The parties cite no authority, however, for the proposition that *In re AJR*'s construction of the statute is no longer binding on this Court.

"An elemental tenet of our jurisprudence, stare decisis, provides that a decision of the majority of justices of [the Supreme] Court is binding upon lower courts." *People v Mitchell*, 428 Mich 364, 369; 408 NW2d 798 (1987). "The obvious reason for this is the fundamental principle that only [the Supreme] Court has the authority to overrule one of its prior decisions." *Paige v City of Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). "Until [it] does so, all lower courts and tribunals are bound by that prior decision and must follow it even if they believe that it was wrongly decided *or has become obsolete*." *Id*. (emphasis added.) Accord *Rodriguez de Quijas v Shearson/American Express, Inc*, 490 US 477, 484; 109 S Ct 1917; 104 L Ed 2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

In past published decisions of this Court, there has been disagreement about whether this Court can, after the Legislature amends a statutory provision, disregard past decisions of our Supreme Court construing the provision as it was *formerly* drafted. However, our Supreme Court recently addressed that question in *Associated Builders & Contractors v City of Lansing*, 499 Mich 177, 191-192 & n 32; 880 NW2d 765 (2016) (*Associated Builders*), holding that this Court remains bound to follow the Supreme Court's interpretation of a since-amended statute if the intervening amendment merely "*undermined*" the foundations of the Supreme Court's prior decision, but not if the intervening amendment "*clearly . . .* superseded" the Supreme Court's interpretation. The Supreme Court acknowledged that this can be a thorny inquiry:

> Although one can determine with relative ease whether a case was overruled by this Court, we acknowledge that it is not always so easy to determine whether a case has been "clearly overruled or superseded" by intervening changes in the positive law. At one end of the spectrum are situations in which the Legislature has entirely repealed or amended a statute to expressly repudiate a court decision. In such situations, lower courts have the power to make decisions without being bound by prior cases that were decided under the now-repudiated previous positive law. [*Id*. at 191 n 32.]

"The other end of the spectrum is harder to define," but as a general rule, where the operative statutory language interpreted by the Supreme Court in the previous case remains the same after amendment, the intervening amendment of the statute does not clearly overrule or supersede the Supreme Court's prior interpretation. See *id*.

Under the framework delineated in *Associated Builders*, we conclude that this Court is not bound to follow *In re AJR*'s construction of former MCL 710.51(6) here because that construction was clearly superseded by 2016 PA 143. Importantly, 2016 PA 143 directly amended the operative statutory language that our Supreme Court relied upon in deciding *In re AJR*—the phrase "*the* parent having *legal* custody of the child"—changing it to "*a* parent having custody of the child *according to a court order*[.]" (Emphasis added.) As held in *In re AJR*, 496 Mich at 348-349, the former version of MCL 710.51(6) required the parent to have "sole legal custody" of the child. However, the new language is clear that only "a" parent, rather than "the" parent, has to have custody according to a court order—a much broader requirement. Consequently, 2016 PA 143 clearly superseded *In re AJR*'s construction of MCL 710.51(6), and this Court is therefore no longer bound to follow that construction.

While we agree with the trial court's interpretation of the statute, we are not persuaded by its reliance on legislative history to support its holding. While it is true that several legislative bill analyses support the trial court's conclusion that the proposed amendment to 2016 PA 143 was intended to counter *In re AJR*'s holding and change the meaning that courts would ascribe to MCL 710.51(6), such "legislative analyses should be accorded very little significance by courts when construing a statute." *In re Certified Question from US Court of Appeals for Sixth Circuit*, 468 Mich 109, 115 n 5; 659 NW2d 597 (2003). Legislative bill analyses, which are nothing more than the summaries and interpretations of unelected employees of the legislative branch, have been described by our Supreme Court as "a feeble indicator of legislative intent and is therefore a generally unpersuasive tool of statutory construction." *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587; 624 NW2d 180 (2001). We similarly conclude that legislative bill analyses provide neither authoritative nor persuasive insight into whether an intervening amendment to a statute supersedes prior Michigan Supreme Court interpretations. Because the amended language of the statute unambiguously supersedes *In re AJR*'s construction of the statute, no further analysis is permitted.

## B. STATUTORY ANALYSIS

We are now tasked with determining whether the trial court properly interpreted MCL 710.51(6), as amended by 2016 PA 143. We conclude that it did.

As our Supreme Court explained in *Sun Valley Foods Co v Ward*, 460 Mich 230, 236-237; 596 NW2d 119 (1999):

> The rules of statutory construction are well established. The foremost rule, and our primary task in construing a statute, is to discern and give effect to the intent of the Legislature. This task begins by examining the language of the statute itself. The words of a statute provide the most reliable evidence of its intent[.] If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted. Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent.

In interpreting the statute at issue, we consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme. As far as possible, effect should be given to every phrase, clause, and word in the statute. [Quotation marks and citations omitted.]

"A provision of a statute is ambiguous only if it irreconcilably conflicts with another provision or is equally susceptible to more than a single meaning." *Bedford Pub Sch v Bedford Ed Ass'n MEA/NEA*, 305 Mich App 558, 565; 853 NW2d 452 (2014).

"Statutes that relate to the same subject or that share a common purpose are *in pari materia* and must be read together as one law, even if they contain no reference to one another and were enacted on different dates." *Walters v Leech*, 279 Mich App 707, 709-710; 761 NW2d 143 (2008). "The object of the *in pari materia* rule is to give effect to the legislative intent expressed in harmonious statutes. If statutes lend themselves to a construction that avoids conflict, that construction should control." *Id*. at 710 (citations omitted).

We disagree with petitioners' suggestion that the pertinent language in MCL 710.51(6) is ambiguous. Petitioners assert that the language of MCL 710.51(6) is ambiguous because it is unclear whether all parents petitioning for stepparent adoption must have custody "according to a court order" or whether this applies only to the first clause of the sentence and is therefore limited to divorced parents. Specifically, petitioners first posit that under the "last antecedent" rule of statutory construction, the statute is ambiguous because it is unclear whether the phrase "according to a court order" applies *only* to a divorced parent who later remarries and files a petition seeking stepparent adoption under MCL 710.51(6), or also applies to the putative father situation addressed by the statutory language. Under those same principles of grammar and statutory interpretation, we find no ambiguity.

As this Court recently noted in *In re Brody Trust (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 330871), lv pending; slip op at 8-9:

"Because the Legislature is presumed to know the rules of grammar, statutory language must be read within its grammatical context unless something else was clearly intended." *Niles Twp v Berrien Co Bd of Comm'rs*, 261 Mich App 308, 315; 683 NW2d 148 (2004). "Proper syntax provides that commas usually set off words, phrases, and other sentence elements that are parenthetical or independent." *Dale v Beta-C, Inc*, 227 Mich App 57, 68-69; 574 NW2d 697 (1997). Moreover, "[i]t is a general rule of grammar and of statutory construction that a modifying word or clause is confined solely to the last antecedent, unless a contrary intention appears." *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999).

The "last antecedent" of a given term or phrase is "the last word, phrase, or clause that can be made an antecedent without impairing the meaning of the sentence[.]" *People v English*, 317 Mich App 607, 614; 897 NW2d 184 (2016) (opinion of WILDER, P.J.), quoting 2A Singer & Singer, Sutherland Statutory Construction (7th ed), § 47:33, pp 494-497.

In this circumstance, the last antecedent rule does not support petitioners' argument that the statute is ambiguous. The last word, phrase, or clause that can be made an antecedent of the modifying phrase "according to a court order"—without impairing the meaning of the sentence—is the phrase, "custody of the child." Put differently, the phrase "according to a court order" modifies the immediately preceding phrase "custody of the child." Its meaning is clarified by reading the whole as one unit—i.e., "custody of the child according to a court order." Thus, we do not find the last antecedent rule particularly helpful, and it certainly does not render the statute ambiguous.

We similarly disagree that other rules of grammar render the statute ambiguous. The provision at issue can be broken down as follows. Before the colon that introduces the two subsections of the provision at issue, i.e., MCL 710.51(6)(a) and (b), there is a single complete sentence, which consists of four comma-separated clauses: (1) "If the parents of a child are divorced, (2) "or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter," (3) "and if a parent having custody of the child according to a court order subsequently marries and that parent's spouse petitions to adopt the child," (4) "the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur: . . . ." Petitioners insist that rules of grammar dictate that the second clause, which involves unmarried parents, is an independent clause that stands alone; therefore, unmarried parents are not subject to the court-order requirement. Petitioners argue that, because the phrase "according to a court order" appears in the third clause of the sentence, and is separated from the first two clauses by commas, that phrase should be interpreted as applying only to the *first* clause. Petitioners support this argument by asserting that the sentence's second clause "is an independent clause, since it is set off by commas." This argument is unpersuasive.

A basic principle of grade-school grammar is that an independent clause is one that can stand alone as a complete sentence. In other words, an independent clause is a complete thought that stands by itself as a simple sentence or is part of a complex sentence in which there is at least one dependent clause. By contrast, dependent clauses are clauses in a complex sentence that cannot stand alone as complete sentences. Thus, contrary to petitioners' assertion, a clause is not independent just because it is separated by commas.

In this case, the second clause at issue here—"or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter"—is a dependent clause because it is not a complete thought and cannot stand alone as a grammatically correct sentence. The independent clause is the fourth one, which *can* stand alone as a complete sentence: "[T]he court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur[.]" Therefore, the operative clause at issue here is a dependent clause, making up part of the complex sentence overall.

Accordingly, petitioners' proposed construction of MCL 710.51(6) is unpersuasive on its grammatical merits. In context, it is clear that the commas that set off the first three dependent clauses of the sentence from the fourth independent clause are parenthetical in nature. The basic sentence structure is a logical construct—if *x*, then *y*—with a few disjunctive uses of "or" providing alternative options. The meaning that is plainly expressed by the grammatical context

is as follows: (1) "If [(a)] the parents of a child are divorced, or if [(b)] the parents are unmarried but the father [(*i*)] has acknowledged paternity or [(*ii*)] is a putative father who meets the conditions in section 39(2) of this chapter, and [(2)] if [(a)] a parent having custody of the child according to a court order subsequently marries and [(b)] that parent's spouse petitions to adopt the child, [then] the court upon notice and hearing may issue an order terminating the rights of the other parent if [(3)] both of the following occur . . . ."

To arrive at petitioners' contrary interpretation, one is forced to ignore the plain meaning that is expressed by the Legislature's decision to use the disjunctive use of "or" and the conjunctive use of "and" at different times, particularly in concert with the word "if." Put simply, petitioners' construction of the sentence does not afford distinct meanings to the phrases "and if" and "or if." "As this Court has previously recognized, the words 'and' and 'or' are not interchangeable and their strict meaning should be followed when their accurate reading does not render the sense dubious and there is no clear legislative intent to have the words or clauses read in the conjunctive." *Coalition Protecting Auto No-Fault v Mich Catastrophic Claims Ass'n (On Remand)*, 317 Mich App 1, 14; 894 NW2d 758 (2016) (citation omitted). In this sentence, affording those words their respective conjunctive and disjunctive meanings does not render the provision unintelligible, nor is there any clear legislative intent that would require a different interpretation. For those reasons, we reject petitioners' attempt to inject ambiguity into the statute.

Petitioners also argue that the trial court's construction of the statute would render part of MCL 710.51(6) nugatory because there would never be a scenario where a mother, who has custody according to a court order, could petition to terminate the parental rights of a putative father.[3] In support, petitioners argue that under MCR 3.903(A)(24), a putative father is defined as one who has never obtained a court order to establish legal fatherhood. Thus, if a mother obtains a court order granting her custody, then that order would also change the status of the putative father to a legal father. Therefore, according to petitioners, "if all mothers are required to obtain a custody order before petitioning for stepparent adoption [under MCL 710.51(6)], then it would be impossible to petition for stepparent adoption against a *putative* father because there could never be a putative father under the Trial Court's interpretation." (Emphasis added.) This argument is without merit. Among other things, petitioners' argument ignores several contemporary legal and societal realities, such as the fact that there can be more than one putative father, that children born out of wedlock may have *only* putative fathers, that the custodial parent need not be the mother, that a child's legal parents can differ from the child's biological parents, and that the parent petitioning for termination under MCL 710.51(6) need not be the mother. In other words, petitioners' argument rests on oversimplification and on the tacit assumption that MCL 710.51(6) will only be applied in cases involving traditional familial arrangements.

---

[3] See *Sun Valley Foods Co v Ward*, 460 Mich at 237 ("As far as possible, effect should be given to every phrase, clause, and word in the statute.").

Petitioners' view of MCL 710.51(6)'s operation is also inconsistent with the fundamental principle that MCL 710.51(6) must, as part of the Adoption Code, be construed *in pari materia* with several other acts that also relate to child custody and the rights of, among others, biological parents, adoptive parents, "presumed" fathers, "acknowledged" fathers, "genetic" fathers, and putative fathers generally, including the Child Custody Act, MCL 722.21 *et seq*., the Acknowledgment of Parentage Act, MCL 722.1001 *et seq*., the Paternity Act, MCL 722.711 *et seq*., the Revocation of Paternity Act, MCL 722.1431 *et seq*., the Genetic Parentage Act, MCL 722.1461 *et seq*., and the Summary Support and Paternity Act, MCL 722.1491 *et seq*. As these acts demonstrate, this state has an extensive statutory scheme governing paternity disputes. See, e.g., *Jones v Jones*, 320 Mich App 248; 905 NW2d 475 (2017) (construing the Revocation of Paternity Act); *In re KH*, 469 Mich 621, 624-625; 677 NW2d 800 (2004) (discussing the "presumption of legitimacy" and the Paternity Act). A proper construction of MCL 710.51(6) cannot be reached without considering the statute's operation within this complex scheme.

Viewed through that statutory lens, we disagree with the meaning the petitioners suggest should be afforded to the phrase "putative father" in MCL 710.51(6). Petitioners attempt to use the definition from MCR 3.903(A)(24)—" 'Putative father' means a man who is alleged to be the biological father of a child who has no father as defined in MCR 3.903(A)(7)"—to render the trial court's interpretation of MCL 710.51(6) nugatory. To begin with, however, the phrase "putative father" was added to MCL 710.51(6) by 1982 PA 72, roughly three decades before MCR 3.903 was adopted (in 2003). See *In re AJR*, 469 Mich at 360 n 29 (discussing the statutory history of MCL 710.51). As a matter of logic, our 1982 Legislature could not have intended for the phrase "putative father" to be construed by reference to a definition that was first set forth in a court rule in 2003. See *id*. at 359 ("Our inquiry is the intent of the Legislature that in 1980 added the provision").

More importantly, petitioners take the phrase "putative father" out of context. The full relevant phrasing is "putative father *who meets the conditions in section 39(2) of this chapter*," i.e., MCL 710.39(2).[4] (Emphasis added.) Thus, instead of importing a definition for "putative father" from MCR 3.903(A)(24), this Court must look to MCL 710.39(2) to decide who qualifies as a "putative father" for purposes of MCL 710.51(6).

As this Court recognized in *In re BKD*, 246 Mich App 212, 215; 631 NW2d 353 (2001), in the context of adoption proceedings, MCL 710.39 acts to determine the parental rights of a

---

[4] MCL 710.39(2) provides:

> If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with [MCL 710.51(6)] or [MCL 712A.2].

putative father "[w]hen the parents of a child are unmarried[.]" This is necessary because, although a putative father is one who, by definition, has not legally established his paternity, see *In re MKK*, 286 Mich App 546, 558; 781 NW2d 132 (2009),[5] "the Due Process and Equal Protection Clauses bar the state from terminating the parental rights of the father of an illegitimate child without the same showing of unfitness that would be necessary to terminate the rights of a mother or a married father," *In re BKD*, 246 Mich App at 222. "However, where the father of an illegitimate child has not taken steps to establish a custodial or supportive relationship, the state may constitutionally terminate his parental rights through procedures and standards that are less stringent than those required to terminate the parental rights of a mother or a married father." *Id*.; see also *In re MKK*, 286 Mich App at 561 (noting that it remains an unsettled question in this state whether a putative father who has *not* established a custodial or supportive relationship has any cognizable liberty interest in the child).

This separation of putative fathers into two distinct categories, in compliance with federal constitutional law, is precisely what MCL 710.39(1) and (2) accomplish. *In re MKK*, 286 Mich App at 559-560 & n 5. "[B]ecause proceedings under the Adoption Code routinely take precedence over separate paternity actions," *In re MGR*, 323 Mich App 279, 286; 916 NW2d 662 (2018), lv gtd 503 Mich 877 (2018), without MCL 710.39, there would be a distinct risk that a biological father's protected liberty interests in his child could be impinged by an order of adoption that was entered while the father's duly instituted paternity action remained pending. For instance, without MCL 710.39, which protects the interests of *putative* fathers as if they are *legal* fathers, a child whose unmarried mother had consented to the termination of her parental rights might be placed with and adopted by an unrelated couple before the biological father was ever afforded an opportunity to establish his paternity. Indeed, after considering such constitutional implications, in *In re MKK*, 286 Mich App at 562, this Court held that, notwithstanding the protections afforded by MCL 710.39(1) and (2), a paternity action instituted by a putative father can represent "good cause" justifying the adjournment of pending adoption proceedings, at least under certain circumstances.

With this legal backdrop in mind, petitioners' argument is logically unsound. Petitioners contend that under the trial court's construction of MCL 710.51(6), which would require a petitioning parent to have custody of the involved child "according to a court order," it would be "impossible" for a petitioning parent to petition for the termination of the rights of a putative father. Although this argument has facial appeal at first blush, it is ultimately incorrect. We will not list every factual scenario that may arise in the context of a putative father where the mother of the child has custody by way of a court order. However, we could certainly imagine a scenario where the mother was unmarried when the child was born, and has never been divorced, but nevertheless has custody of the minor child according to a court order and has petitioned to

---

[5] Recently, in *In re MGR*, 503 Mich 877 (2018) (*In re MGR II*), the Supreme Court granted leave to appeal this Court's decision in *In re MGR*, 323 Mich App 279; 916 NW2d 662 (2018), which relied on *In re MKK* as binding precedent. One of the issues to be addressed by the Supreme Court in *In re MGR* is whether *In re MKK* "should be overruled." *In re MGR II*, 503 Mich at 877.

have the parental rights of the child's putative father terminated. Therefore, the trial court's construction of MCL 710.51(6) does not render the phrase "putative father" nugatory and is plainly reflected in the statutory language. Thus, the trial court properly determined that a parent is only entitled to petition for termination under MCL 710.51(6) if the petitioning parent, at the time of the petition, has custody of the child who is at issue according to a court order.[6]

Lastly, petitioners argue the trial court erred in its application of MCL 710.51(6) to the facts of this case. We need not reach this issue.

There is no dispute that petitioner mother, although she had custody of the child, did not have custody according to a court order when petitioners filed their petition under MCL 710.51(6) and when the trial court ruled on that petition. Therefore, dismissal of the disputed petition was appropriately granted, and this Court need not consider or decide the other claims of error raised by petitioners on appeal because they are moot. See *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016) ("[a] matter is moot if this Court's ruling cannot for any reason have a practical legal effect on the existing controversy") (quotation marks and citation omitted).

Affirmed.

/s/ Thomas C. Cameron
/s/ Stephen L. Borrello
/s/ Brock A. Swartzle

---

[6] It seems that petitioners have misdirected their policy arguments concerning why the law *ought* to be different. "Arguments that a statute is unwise or results in bad policy should be addressed to the Legislature." *Proctor v White Lake Twp Police Dep't*, 248 Mich App 457, 462; 639 NW2d 332 (2001). See also *In re AJR*, 496 Mich at 365 ("[T]o the extent that petitioners are dissatisfied with the remedy available to them in light of their circumstances, they may seek recourse from the Legislature.").