# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 6, 2019

157821-2

*In re* MGR, Minor.

SC: 157821-2
COA: 338286; 340203
Oakland CC Family Division:
  2016-842995-AD

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

_____/

On order of the Court, leave to appeal having been granted and the briefs and oral arguments of the parties having been considered by the Court, we REVERSE the February 27, 2018 judgment of the Court of Appeals, which held that petitioners' appeal was moot because of an order of filiation in a related paternity case, *Brown v Ross* (Docket No. 157997). We also VACATE the Oakland Circuit Court's determination that the putative father was a "do something" father under Section 39(2) of the Michigan Adoption Code, MCL 710.21 *et seq.*, and we REMAND this case to the Family Division of the Oakland Circuit Court for further proceedings.

The Court of Appeals erred in holding that petitioners' appeal of the September 14, 2017 order was moot because of the subsequently entered order of filiation in the related paternity case, *Brown v Ross* (Docket No. 157997). MGR was born on June 5, 2016. On June 9, 2016, petitioners filed the petition for adoption. Respondent-father filed the paternity action on July 15, 2016. "All proceedings under [the Michigan Adoption Code] shall be considered to have the highest priority and shall be advanced on the court docket so as to provide for their earliest practicable disposition." MCL 710.25(1). "Although proceedings under the Adoption Code should, in general, take precedence over proceedings under the Paternity Act, adoption proceedings may be stayed upon a showing of good cause, as determined by the trial court on a case-by-case basis." *In re MKK*, 286 Mich App 546, 555 (2009), citing MCL 710.25(2). Respondent-father did not request that the trial court stay the adoption proceedings in favor of the paternity proceedings pursuant to MCL 710.25(2), and the facts did not justify a stay in any event.

Instead, over petitioners' objection that there was no good cause, the trial court, *sua sponte*, entered an order on April 17, 2017 staying the adoption proceedings until the paternity action was resolved. The Court of Appeals, in orders entered on May 31, 2017 and July 25, 2017, directed the trial court to commence and conclude the Section 39 hearing, see MCL 710.39. Respondent-father did not seek further appellate review of either order. The trial court held the Section 39 hearing on August 7 and 8, 2017 but did not issue a decision. On August 29, 2017, the Court of Appeals ordered the trial court to issue a decision with respect to the Section 39 hearing. Respondent-father did not seek further appellate review of the Court of Appeals order. The trial court issued its Section

39 opinion on September 14, 2017. Respondent-father never requested the court to stay the adoption proceedings under MCL 710.25(2) for good cause relating to his separate paternity proceeding, and the facts did not justify a stay in any event. The trial court entered an order of filiation on October 4, 2017—*after* it had issued its Section 39 determination and *after* petitioners had appealed that decision to the Court of Appeals.

The birth mother, on the other hand, twice asked the trial court to stay the paternity action. On June 7, 2017, the birth mother moved for stay, and the circuit court denied it on June 14, 2017. Following petitioners' appeal of the trial court's Section 39 determination, the birth mother again moved to stay the paternity action pending that appeal. On October 4, 2017, the trial court denied the motion and entered the order of filiation the same day.

The trial court's denial of the birth mother's motions was an abuse of discretion given the unique circumstances of this case. The trial court had the authority to stay the paternity action in favor of the adoption proceedings: absent good cause, adoption proceedings should be given priority. MCL 710.21a and MCL 710.25(2). And a trial court has the inherent authority to control the progress of a case. See MCR 1.105; MCR 2.401; see also MCR 3.217(A) ("Procedure in actions under the Paternity Act, MCL 722.711 *et seq.*, is governed by the rules applicable to other civil actions except as otherwise provided by this rule and the act.").

Because petitioners had a right to appeal the Section 39 determination and because good cause to delay those proceedings had not been alleged, the trial court should have stayed the paternity proceedings pursuant to MCR 7.209(E)(2)(b) so that the appellate court could review that decision.[1] The order of filiation was therefore erroneously entered on October 4, 2017 and is vacated in our June 6, 2019 order in *Brown v Ross* (Docket No. 157997). Accordingly, the order of filiation did not moot appellate review of the trial court's September 14, 2017 Section 39 decision.

Further, we conclude that the trial court abused its discretion in determining that the putative father was a "do something" father under Section 39(2) of the Michigan Adoption Code, MCL 710.39(2). To qualify as a "do something" father, a putative father must demonstrate that he has either (1) established a custodial relationship with the child or (2) provided "substantial and regular support or care in accordance with [his] ability to

---

[1] We agree with Justice Viviano that "*In re MKK* represents an admirable effort by the Court of Appeals to balance the competing rights, interests and responsibilities of the parties when determining whether to proceed with proceedings under the Adoption Code or a case filed under the Paternity Act." And we also agree that the Legislature's input on this question would be helpful. But we respectfully disagree that this order creates any *per se* rule; our decision today is based in the very specific facts of this case alone.

provide support or care for the mother during her pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him[.]" MCL 710.39(2). Respondent-father failed to satisfy either condition. After the birth mother discovered she was pregnant in October 2015, she and respondent-father lived for a matter of weeks with respondent-father's grandmother. In November 2015, the pair rented an apartment together, paying their $700 security deposit with funds from the birth mother's sister. The birth mother lived in the apartment from November 2015 until February 2016. Until the month before the birth mother moved out of the apartment—in her fourth month of pregnancy—the parties shared household responsibilities and expenses for rent, food, and utilities. Respondent-father provided financial assistance one time in the amount of $200 to partially repay his share of the security deposit. Respondent-father was employed full-time until the time of the child's birth, when he voluntarily terminated his employment. Respondent-father took the birth mother to Planned Parenthood once for a pregnancy test, but did not otherwise pay for or participate in her prenatal, delivery, or postnatal medical care.

After the child was born on June 5, 2016, respondent-father received notice of the hearing to determine his rights as a putative father on July 27, 2016, making the relevant statutory 90-day time period April 28, 2016 to July 27, 2016. MCL 710.39(2). Respondent-father testified that he set up a crowdfunding webpage in October or November 2016, to pay for his legal fees and expenses, outside of the statutory 90-day window. But he never paid any of the money raised to the child or the child's caretakers. Respondent-father also claimed he purchased several items for the child, including diapers and clothing, using money from odd jobs or Christmas gifts, but he never attempted to get those items to the child through either the adoption agency or the birth mother. The facts did not establish that respondent-father provided substantial and regular support or care either to the birth mother during her pregnancy or to the birth mother or the child after the child's birth during the relevant 90-day period. Respondent-father's support was insubstantial and irregular.

Further, this is not a case in which respondent-father lacked the ability to support the birth mother or the child; the record shows that respondent-father was employed throughout the birth mother's pregnancy and had the means to provide financial support. The trial court abused its discretion when it ruled that respondent-father was entitled to the protections of MCL 710.39(2) because the record does not support a finding that he provided substantial and regular support or care for the birth mother during her pregnancy or the birth mother or child during the 90 days before he received service of the notice of the hearing, despite having the ability to do so. We therefore VACATE the trial court's September 14, 2017 order, and we REMAND this case to the Family Division of the Oakland Circuit Court to conduct an analysis under Section 39(1) of the Michigan Adoption Code, MCL 710.39(1).

In light of our resolution of these issues, we decline to reach petitioners' remaining issue.

We do not retain jurisdiction.

MARKMAN, J. (*concurring*).

I concur in the majority's decision to reverse the judgment of the Court of Appeals, which held that petitioners' appeal in this adoption case is moot because of an order of filiation in a related paternity case, *Brown v Ross* (Docket No. 157997), vacate the trial court's determination that the putative father was a "do something" father under MCL 710.39(2), and remand to the trial court to conduct an analysis under MCL 710.39(1). That is, I agree with the majority that the trial court in the paternity case abused its discretion by denying the birth mother's motions to stay the paternity case for the adoption case and that, as a result, the order of filiation was erroneously entered before the adoption case was completed. Accordingly, the majority correctly vacates the trial court's order of filiation in the paternity case and holds that petitioners' appeal in this adoption case is not moot. I also agree with the majority that the trial court abused its discretion in determining that the putative father was a "do something" father under MCL 710.39(2), for the reasons explained by the majority.

However, I write separately because I disagree with the majority's statement that " '[a]lthough proceedings under the Adoption Code should, in general, take precedence over proceedings under the Paternity Act, adoption proceedings may be stayed upon a showing of good cause, as determined by the trial court on a case-by-case basis.' *In re MKK*, 286 Mich App 546, 555 (2009), citing MCL 710.25(2)." Because I believe, for the reasons explained below, that proceedings under the Adoption Code must take priority over proceedings filed under the Paternity Act and there is no "good cause" exception to that requirement, I believe that *In re MKK* was wrongly decided and thus would not rely on it as the majority does. That is, I would not, as does the majority, focus on whether respondent-father requested the trial court to stay the adoption case for the paternity case and whether the facts warranted such a stay. Instead, I would simply hold, in accordance with the Legislature, that an adoption case must take priority over a paternity case and thus that the trial court abused its discretion by not staying the paternity case for the adoption case. The majority states, "We agree with Justice Viviano that '*In re MKK* represents an admirable effort by the Court of Appeals to balance the competing rights, interests, and responsibilities of the parties when determining whether to proceed with proceedings under the Adoption Code or a case filed under the Paternity Act.' " However "admirable" this effort may or may not be, it would have been far more "admirable," in my judgment, had the Court of Appeals, and now this Court, simply abided by the mandate of the Legislature that adoption cases be given the "highest priority." It is not for this, or any other, Court to "balance the competing rights, interests, and responsibilities" of the parties where that has already been done by the Legislature.

MCL 710.25(1) provides, "All proceedings under [the Adoption Code] shall be considered to have the highest priority and shall be advanced on the court docket so as to provide for their earliest practicable disposition."[2]  Pursuant to this provision, an adoption case should never be stayed for a paternity case because an adoption case must be given the "highest priority."  MCL 710.25(2) states that "[a]n adjournment or continuance of a proceeding under [the Adoption Code] shall not be granted without a showing of good cause."  I believe that *In re MKK*, and now this Court, erroneously interpret this provision to signify that, upon a showing of "good cause," an adoption case *can* be stayed for a paternity case.  Instead, I believe the more reasonable interpretation of these provisions is that while an adoption case can, upon a showing of good cause, be adjourned or postponed, an adoption case must nonetheless take priority over a paternity case.  In other words, MCL 710.25(2) is not an exception to the requirement in MCL 710.25(1) that an adoption case must be given the "highest priority."  There is no instance in which another case should be accorded higher priority than an adoption case, and *In re MKK* read language into MCL 710.25(2) that is simply not there.  Stating, as MCL 710.25(2) does, that an adoption case cannot be adjourned without a showing of good cause is not the equivalent of stating, as *In re MKK* does, that upon a showing of good cause, a paternity case may be given higher priority than an adoption case.  MCL 710.25(1) provides that an adoption case shall be given the "highest priority," and there are no exceptions to that requirement.  While MCL 710.25(2) does allow an adoption case to be adjourned, upon a showing of good cause, it does not allow another case to take priority over that case.  Rather, read in context, I believe MCL 710.25(2) allows an adoption case to be adjourned where, for example, a witness, party, or attorney is unavailable, but it still does not allow a paternity action to be accorded priority.  Holding to the contrary allows the express direction of MCL 710.25(1) to be rendered null and void by MCL 710.25(2), despite that: (a) there is no "good cause" exception contained in MCL 710.25(1), (b) there is no exception of any sort in MCL 710.25(1) to the express dictate set forth in that provision, (c) there is no reference within either provision to the disputed aspect of the other provision, and (d) stating, as MCL 710.25(2) does, that an adjournment of an adoption case shall not be granted without a showing of "good cause" would be a remarkably oblique way of overcoming the explicit dictate of MCL 710.25(1) to consider adoption cases to have the "highest priority."[3]

---

[2] In addition, MCL 710.21a(b) provides that "[i]f conflicts arise between the rights of the adoptee and the rights of another, the rights of the adoptee shall be paramount."

[3] While I agree with the dissent that "[t]here are some reasons to question whether the Court of Appeals' analysis in *In re MKK* is firmly rooted in the plain language of the statutes it relies upon," and while perhaps "those statutes do not explicitly address whether an adoption proceeding should be stayed in favor of a competing paternity action," I believe the requirement that an adoption case be accorded the "highest priority" rather clearly expresses the Legislature's intention to not have adoption cases stayed for

Furthermore, I believe that this interpretation of § 25 of the Adoption Code is more generally consistent with the Adoption Code as a whole. As discussed, the Legislature clearly expressed its intention in the Adoption Code that adoption cases, not paternity cases, proceed first, and it created no exception to this rule, in particular for paternity cases. MCL 710.25(1). Instead, the Adoption Code provides detailed procedures for addressing the rights of putative fathers contesting an adoption. To begin with, the Adoption Code provides that the court shall determine the identity of the father by way of an affidavit from the mother, not by performing a DNA test as is done under the Paternity Act. MCL 710.36(6).[4] Next, under the Adoption Code, the rights of putative fathers are determined not by performing a DNA test as they are under the Paternity Act, but, instead, by the nature of the relationship between the putative father and the child and the level of care and support provided by the putative father to the mother and child. See MCL 710.39.[5] That is, the Adoption Code sets forth differing

paternity cases, but to instead have paternity cases stayed for adoption cases, to avoid the very situation that resulted in this case in which the lower courts allowed a paternity case to take priority over an adoption case: namely, that the adoption case was rendered moot because of the order of filiation in the paternity case.

[4] MCL 710.36(6) provides:

> The court shall receive evidence as to the identity of the father of the child. In lieu of the mother's live testimony, the court shall receive an affidavit or a verified written declaration from the mother as evidence of the identity and whereabouts of the child's father. If the court determines that the affidavit or verified written declaration is insufficient, the court shall allow amendment of the affidavit or verified written declaration. If the court determines that the amendment of the affidavit or verified written declaration is insufficient, the court may receive live testimony from the mother. Based upon the evidence received, the court shall enter a finding identifying the father or declaring that the identity of the father cannot be determined.

[5] MCL 710.39 provides, in pertinent part:

> (1) If the putative father does not come within the provisions of subsection (2), and if the putative father appears at the hearing and requests custody of the child, the court shall inquire into his fitness and his ability to properly care for the child and shall determine whether the best interests of the child will be served by granting custody to him. If the court finds that it would not be in the best interests of the child to grant custody to the putative father, the court shall terminate his rights to the child.

> (2) If the putative father has established a custodial relationship with the child or has provided substantial and regular support or care in

standards for terminating a putative father's parental rights depending on the nature of the relationship between the putative father and the child and the level of care and support provided by the putative father to the mother and child. *Id*. The Adoption Code also provides a means both of terminating the putative father's rights if he fails to satisfy the applicable standards and transforming him into a legal father with custody rights if he succeeds in meeting these standards. *Id*. Had the Legislature intended that the Paternity Act be used to thwart or subordinate adoption proceedings, it would not have created these detailed procedures. It would have simply called for the putative father to take a DNA test and determine his rights exclusively on the basis of those results as is done under the Paternity Act.[6]

If an adoption case can, in fact, be stayed for a paternity case, all these provisions within the Adoption Code will be undermined. An adoption case will not be given the "highest priority" contrary to MCL 710.25(1). The identity of the father will be determined by a DNA test rather than by an affidavit from the mother contrary to MCL 710.36(6). The rights of putative fathers will also be determined by a DNA test rather than by the nature of the relationship between the putative father and the child and the level of care and support provided by the putative father to the mother and child, all contrary to MCL 710.39. Finally, adoption cases involving putative fathers will not be decided on a consistent basis because some will be resolved under the Adoption Code and others will be resolved under the Paternity Act, depending on whether the trial court finds "good cause" to stay the adoption case for the paternity case.

---

accordance with the putative father's ability to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA.

\* \* \*

(5) If the mother's parental rights are terminated under this chapter or other law and are not restored under section 62 of this chapter and if the court awards custody of a child born out of wedlock to the putative father, the court shall enter an order granting custody to the putative father and legitimating the child for all purposes.

[6] Moreover, the Adoption Code provides that a person who files a notice of intention to claim paternity is entitled to notice of adoption proceedings. MCL 710.33(3). It is noteworthy that this is *all* that it provides; it does not provide that the adoption case should be stayed for the paternity case. And nothing within the Paternity Act suggests anything to the contrary.

My interpretation is also more consistent with the fundamental purposes of the Adoption Code and the Paternity Act. While the purposes of the Adoption Code include "[t]o provide procedures and services that will safeguard and promote the best interests of each adoptee in need of adoption and [to] protect the rights of all parties concerned," MCL 710.21a(b), a purpose of the Paternity Act is "to confer upon circuit courts jurisdiction over proceedings to compel and provide support of children born out of wedlock," 1956 PA 205, title. That is, given that the purpose of the Adoption Code is to protect the rights of *all* those involved in an adoption case, while the purpose of the Paternity Act is to compel fathers of children born out of wedlock to pay child support, it makes considerable sense that a putative father's rights in an adoption case would be determined pursuant to the Adoption Code rather than the Paternity Act.

Because I do not believe *In re MKK* communicates what the Legislature intended, as best evidenced by the plain and straightforward language of the Adoption Code that adoption cases be given the "highest priority," I would overrule *In re MKK* and hold that adoption cases are to be given the "highest priority" and that there is no "good cause" exception to this requirement, in which the discretion of the judge replaces the judgment of the Legislature.

ZAHRA, J., joins the statement of MARKMAN, J.

VIVIANO, J. (*dissenting*).

The majority concludes that the trial court erred by not staying the putative father's paternity action pending resolution of the adoption proceedings and by concluding that the putative father (Allen Brown) was a "do-something" father under MCL 710.39(2). I disagree with both conclusions and, therefore, respectfully dissent.

This case requires us to consider the interplay between two separate laws: the Michigan Adoption Code, MCL 710.21 *et seq*., and the Paternity Act, MCL 722.711 *et seq*. As stated by the majority, this case involves a petition for adoption, filed June 9, 2016, and a competing paternity action, filed July 15, 2016. Petitioners moved on three different occasions for a stay of the paternity action pending resolution of the adoption proceedings, once in Macomb County and twice after venue was transferred to Oakland County. The trial court denied each of these motions. On April 17, 2017, the trial court *sua sponte* entered an order staying the adoption proceedings. Petitioners appealed this order to the Court of Appeals and filed a motion for reconsideration in the trial court. On May 17, 2017, the trial court issued an opinion explaining its decision. The trial court relied upon the Court of Appeals decision in *In re MKK*, 286 Mich App 546 (2009), and explained that "[w]here contemporaneous actions are filed under the adoption code and paternity act, the putative father is entitled to have the adoption proceedings stayed pending resolution of the paternity action if he can establish good cause to do so . . . ." The court then proceeded to consider the facts of the case and concluded that "Mr.

Brown's actions establish good cause." Thus, the trial court denied petitioners' motion for reconsideration of the stay.

On May 31, 2017, the Court of Appeals entered an order denying petitioners' motion for peremptory reversal. Puzzlingly, however, without analyzing the trial court's good-cause analysis or explicitly reversing the stay order, the Court of Appeals also ordered the trial court to "schedule a hearing pursuant to MCL 710.39 of the Adoption Code forthwith." On September 14, 2017, the trial court issued an opinion and order holding that Brown was a "do-something" father for purposes of MCL 710.39(2) and, therefore, declined to terminate Brown's parental rights. Petitioners appealed this determination to the Court of Appeals, which consolidated this appeal with the yet-pending appeal challenging the stay of the adoption proceedings. Subsequently, on October 4, 2017, the trial court entered an order of filiation in Brown's paternity action.

The Court of Appeals, in a published opinion, dismissed both appeals as moot. *In re MGR*, 323 Mich App 279 (2018). Regarding the appeal from the trial court's order staying the adoption proceedings, the Court of Appeals explained that the appeal was moot in light of the fact that the § 39 hearing had concluded. *Id*. at 284; *id*. at 292-294 (O'Brien, J., concurring in part and dissenting in part). Regarding the appeal from the trial court's § 39 determination, the Court of Appeals majority concluded that, in light of the order of filiation in the paternity action, Brown was a legal father and, accordingly, his rights could not be terminated pursuant to § 39. *Id*. at 284-286 (opinion of the court). Thus, because the Court of Appeals could not grant relief under § 39, it dismissed petitioners' appeal as moot. *Id*. at 288. Petitioners have appealed this decision to this Court.

The majority reverses the Court of Appeals' mootness holding because it concludes that the order of filiation should never have been entered in the paternity case. Relying on §§ 21a and 25 of the Adoption Code, as well as the trial court's "inherent authority to control the progress of a case," the majority holds that the trial court abused its discretion in denying the birth mother's motions to stay the paternity action in favor of the adoption proceeding.[7] For the reasons set forth below, I find this analysis problematic.

---

[7]MCL 710.21a sets forth the "general purposes" of the Adoption Code, including, among other things:

> (b) To provide procedures and services that will safeguard and promote the best interests of each adoptee in need of adoption and that will protect the rights of all parties concerned. If conflicts arise between the rights of the adoptee and the rights of another, the rights of the adoptee shall be paramount.

In *In re MKK*, 286 Mich App at 555, the Court of Appeals addressed "whether the Adoption Code or the Paternity Act takes precedence when contemporaneous actions have been filed under each." In that case, the putative father objected to the planned adoption and filed a notice of intent to claim paternity before the birth of the child. See MCL 710.33. And, a few weeks after the child was born, he filed his paternity action. The putative father filed a motion to stay the adoption proceedings pending the outcome of his paternity action and, at the hearing on his motion, presented the results of the DNA testing, which showed a 99.99% probability that he was the child's biological father. The trial court denied the motion to stay and proceeded with a hearing to determine the putative father's rights under MCL 710.39 of the Adoption Code.

On appeal from the trial court's application of the Adoption Code and decision to stay his paternity action in favor of the adoption proceedings, the Court of Appeals noted that "adoption proceedings must be completed as quickly as possible and, in general, be given priority on the court's docket." *In re MKK*, 286 Mich App at 562, citing MCL 710.21a(c) and (d); MCL 710.25(1). But, relying on the "good cause" exception contained in MCL 710.25(2), the Court of Appeals recognized that

> there may be circumstances in which a putative father makes a showing of good cause to stay adoption proceedings in favor of a paternity action. For example, in cases such as this, where there is no doubt that respondent is the biological father, he has filed a paternity action without unreasonable delay, and there is no direct evidence that he filed the action simply to thwart the adoption proceedings, there is good cause for the court to stay the adoption proceedings and determine whether the putative father is the legal father, with all the attendant rights and responsibilities of that status. [*Id.*]

---

(c) To provide prompt legal proceedings to assure that the adoptee is free for adoptive placement at the earliest possible time.

(d) To achieve permanency and stability for adoptees as quickly as possible.

MCL 710.25 provides:

(1) All proceedings under this chapter shall be considered to have the highest priority and shall be advanced on the court docket so as to provide for their earliest practicable disposition.

(2) An adjournment or continuance of a proceeding under this chapter shall not be granted without a showing of good cause.

Thus, the Court of Appeals held that "[a]lthough proceedings under the Adoption Code should, in general, take precedence over proceedings under the Paternity Act, adoption proceedings may be stayed upon a showing of good cause, as determined by the trial court on a case-by-case basis." *Id*. at 555.

I believe that *In re MKK* represents an admirable effort by the Court of Appeals to balance the competing rights, interests, and responsibilities of the parties when determining whether to go forward with proceedings under the Adoption Code or a case filed under the Paternity Act.[8] The majority does not quarrel with the *In re MKK*

---

[8] There are some reasons to question whether the Court of Appeals' analysis in *In re MKK* is firmly rooted in the plain language of the statutes it relies upon—for one thing, those statutes do not explicitly address whether an adoption proceeding should be stayed in favor of a competing paternity action. For this same reason, I question the concurrence's conclusion that the statute clearly reflects a legislative mandate that an adoption case must always take priority over a paternity case. As noted above, MCL 710.25(1) provides that "[a]ll proceedings under this chapter shall be considered to have the highest priority and shall be advanced on the court docket so as to provide for their earliest practicable disposition." Contrary to the concurrence's claim that it is "clearly expressed" and "plain and straightforward," the proviso that adoption proceedings "shall be considered to have the highest priority" is opaque at best. Despite the concurrence's attempt to recast this provision, the Legislature has not instructed that adoption proceedings shall be "given" or "accorded" or "must take" the highest priority, only that they "shall be considered to have" it. The concurrence's rewording of this provision does not help us understand the plain meaning of the words actually chosen by the Legislature. It is also unclear what is meant by the modifier "highest" – the word "priority" is relevantly defined as "in law, a precedence or preference in claims, etc.; as, certain debts are paid in *priority* to others." *Webster's New Twentieth Century Dictionary Unabridged* (2nd Ed), p 1431. If, as the concurrence suggests, an adoption proceeding must always take precedence over a competing paternity action, what does it mean to take the "highest" precedence?

And, what, precisely, does it mean for an adoption case to have the "highest priority"? Does "highest priority" refer to all of the cases competing for the court's time and attention? Does it mean that no other case can proceed at all until the adoption proceedings are completed? Or does "highest priority" only refer to paternity actions or other cases on the court's docket involving the same parties? What if the paternity action is filed in a different court, or in the same court but is assigned to a different judge?

Moreover, while it is hard to understand what this phrase means, a contextual reading of the statute makes it clear that it cannot bear the freight that the concurrence would place on it. If adoption proceedings must always be given precedence, what work is left for the second phrase in MCL 710.25, which provides that adoption proceedings

framework generally, as it notes, but, in my view, it places too much emphasis on which party moved to stay which proceeding. Although I agree with the majority that the putative father has the burden of establishing good cause, the majority seems to go further and require that the putative father file a motion to stay the adoption proceeding

---

"shall be advanced on the court docket so as to provide for their earliest practicable disposition"? The concurrence's reading would render this phrase surplusage, an outcome courts should strive to avoid. See *People v Pinkney*, 501 Mich 259, 282 (2018) ("[A]s a general rule, we must give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory."). In addition, what happens when an adjournment or continuance is granted under MCL 710.25(2)? Do all other matters on the court's docket grind to a halt so that the adoption case can continue to be given precedence? Or just those cases, like a paternity action, that may potentially interfere with the adoption proceeding? Neither the plain language of the statute nor its contexts provides the necessary frame of reference to help us answer these questions.

If the Legislature wished to mandate that the filing of an adoption case would negate a competing paternity action, it easily could have done so explicitly. The Legislature was aware that certain actions taken in an adoption case could have an impact on a paternity case. See e.g., MCL 710.33 (notice of intent to claim paternity "is admissible in a paternity proceeding under Act No. 205 of the Public Acts of 1956, as amended, being sections 722.711 to 722.730 of the Michigan Compiled Laws, and shall create a rebuttable presumption as to the paternity of that child for purposes of that act."). And, if it wished to alter the substantive rights of the parties in the manner the concurrence has suggested, meddling with the trial court's docket is a strange way to accomplish that goal. A more direct way would be to enact a law providing that once an adoption proceeding is filed, parental rights for the child may only be determined in accordance with the relevant provisions of the Adoption Code. Of course, such language is conspicuously absent from section 25(1).

Unlike the concurrence's all-or-nothing approach, the Court of Appeals approach *In re MKK* at least has the virtue of attempting to harmonize these two potentially overlapping and conflicting acts by giving effect to each to the extent practicable. There may be policy reasons why it might be better to resolve all such disputes under the Adoption Code or, alternatively, why it might be better to determine a father's rights under the Paternity Act, at least when such an action is timely filed and diligently prosecuted. But, until the Legislature provides more guidance in this difficult area of the law, I am reticent to read this opaque provision as calling upon us to negate an entire act—instead, I believe the more restrained approach is to view the "highest priority" language as aspirational, in accord with the general purposes of the Adoption Code stated elsewhere. See MCL 710.21a(c) (providing that one of the general purposes of the Adoption Code is "[t]o provide prompt legal proceedings to assure that the adoptee is free for adoptive placement at the earliest possible time.").

that specifically alleges good cause. However, I believe this requirement elevates form over substance since, as the majority's order acknowledges, good cause was at issue each time a stay of the paternity action was sought. Since the very same issue is implicated whether one of the parties is seeking to stay the paternity action or another party is seeking to stay the adoption proceeding, I would not require the putative father to file a separate motion to stay the adoption proceeding that specifically alleges good cause in order to preserve the issue.

In short, unlike the majority, I can think of no logical reason that application of this framework should depend on which party was seeking a stay of which action, or whether a motion to stay was filed at all. Nor do I believe *In re MKK* is distinguishable merely because here, the adoption petition was filed a few weeks before the paternity action.[9] Until the Legislature provides more guidance, I believe the *In re MKK* framework should be used by the trial court to determine whether to allow a paternity action to reach its natural conclusion before a contemporaneously filed adoption proceeding, regardless of which action was filed first, and regardless of which party filed a motion to stay or whether, like here, the stay is entered *sua sponte* by the trial court.[10]

---

[9] I agree that this should not be a " 'race to the courthouse,' where a paternity action takes precedence over an adoption proceeding [or vice versa] merely because the paternity action was filed first; rather, the timing of a paternity claim is but one factor to be considered in determining whether there is good cause under MCL 710.25(2) . . . ." *Id*. at 562.

[10] The majority, by contrast, appears to create a per se rule that, unless a putative father files a motion to stay the adoption proceeding, a trial court must always stay the paternity action in favor of a competing adoption proceeding. The majority gives several reasons for its new rule: (1) "[t]he trial court had the authority to stay the paternity action in favor of the adoption proceedings," (2) "absent good cause, adoption proceedings should be given priority, MCL 710.21a and MCL 710.25(1)," (3) "a trial court has the inherent authority to control the progress of a case," and (4) "petitioners had a right to appeal the . . . determination" made under MCL 710.39, meaning that "the trial court should have stayed the paternity proceedings pursuant to MCR 7.209(E)(2)(b) . . . ." As to the first and third reasons, simply acknowledging that the court had the authority to stay the paternity proceeding does not explain why the trial court abused its discretion in not doing so. As to the second reason, while MCL 710.25(1) establishes the general principle that adoption proceedings "shall be considered to have the highest priority," the statute does not require that all other cases in general—or a paternity action between the same parties in particular—be stayed until the adoption proceedings are resolved. And, as noted above, MCL 710.25(2) has been interpreted as providing that the adoption proceedings may be stayed on a showing of good cause. Finally, as to the fourth reason given by the majority, MCR 7.209(E)(2)(b) only provides that "[a]n appeal does not stay execution" of a trial court's order unless "[t]he trial court grants a stay . . . as justice

Accordingly, in this case, I believe the trial court was correct to apply the *In re MKK* good-cause analysis to determine the priority of the adoption proceedings and the paternity action.[11]   Moreover, I believe the trial court did not abuse its discretion in finding that Brown's actions demonstrated good cause.  In support of its finding of good cause, the trial court noted the following facts, which are not in serious dispute:

(1)   "It is undisputed that Mr. Brown and Ms. Ross had a relationship during which time, in approximately October of 2015, [MGR] was conceived."  Thus, here, like in *In re MKK*, there was little doubt that Brown was the biological father.  Although Brown himself expressed some doubts, the birth mother identified him as the child's father, which was later confirmed by DNA testing in the paternity action.

(2)   Brown timely asserted his rights by refusing to consent to the planned adoption and filing a notice of intent to claim paternity before the birth of the child.  See MCL 710.33.

---

requires or as otherwise provided by statute . . . ."  Here again, the fact that the trial court has the authority to stay a case does not make it an abuse of discretion for the trial court not to do so.  Moreover, MCR 7.209(E)(2)(b) authorizes a trial court to stay the execution of the order appealed from; it does not speak to the authority or requirement of the court to stay one proceeding (i.e., the paternity action) pending the appeal of a separate proceeding (i.e., the adoption proceeding).  In my view, the majority has failed to provide adequate support for its  rule requiring—at least in the absence of a motion by the putative father to stay the adoption proceeding—that a paternity action must be stayed in favor a competing adoption proceeding.

[11] I agree with the Court of Appeals majority and dissent that petitioners' appeal from the trial court's order staying the adoption proceedings is moot: because the trial court completed the § 39 hearing following the Court of Appeals' order, the question of whether the trial court initially erred in staying the adoption proceedings is moot.  However, as recognized by the majority in this Court, the question of whether the trial court erred in denying the motions to stay the paternity action is still relevant because, if the paternity action had been stayed, then the § 39 determination would not be moot.  As I have explained above, I believe that the question of whether the trial court should have stayed the paternity action is a question of good cause.  Thus, I believe that trial court's good-cause analysis, although made in the context of its *sua sponte* decision to stay the adoption proceeding, is still relevant to our analysis of petitioners' appeal from the § 39 determination.

(3)   A few weeks after the child was born, Brown timely filed his paternity action in Macomb County, and I believe that he diligently prosecuted that action, in the face of many obstacles.[12]

Finally, although the trial court did not make an explicit finding on this point, there does not appear to be any direct evidence that Brown filed the paternity action simply to thwart the adoption proceedings—to the contrary, as the trial court noted, at various times during these lengthy proceedings, Brown has asserted his desire to parent the child.[13]

In light of these facts, I believe that the trial court did not abuse its discretion in finding that Brown satisfied the *In re MKK* test.  Like in *In re MKK*, Brown took timely and reasonable steps to establish himself as the legal father of the minor child.  Therefore, I would hold that the trial court did not err in allowing the paternity action to reach its conclusion even though the adoption proceedings were still pending on appeal.

As a result, I would affirm the Court of Appeals' decision holding that the trial court's determination of Brown's rights under MCL 710.39 of the Adoption Code was moot in light of the order of filiation.[14]  However, since the majority's order addresses the § 39 determination, I will do likewise.  I disagree with the majority's conclusion "that the trial court abused its discretion in determining that the putative father was a 'do

---

[12] It took 446 days from the filing of the paternity action until an order of filiation was entered, which is significantly longer than it should take to resolve a paternity action. See Administrative Order No. 2013-12, 495 Mich cxx, cxxiii (2013)  (providing that 75% of all paternity cases should be adjudicated within 147 days from the date of case filing and 95% within 238 days).  Notably, most—if not all—of the delay was attributable to petitioners, who evaded service (necessitating the issuance of a second summons), filed motions to dismiss and change venue, and unsuccessfully requested a stay of the paternity case on three separate occasions.

[13] In considering whether this factor is satisfied, I believe it is important to determine whether the biological father has a genuine interest in becoming, and the willingness and ability to become, the custodial parent of the child.

[14] As the Court of Appeals explained, when the trial court entered the order of filiation in the paternity action, Brown was no longer the *putative* father—he became the child's *legal* father.  Since Brown was no longer the putative father, no court could grant relief under MCL 710.39(1) or MCL 710.39(2), which both explicitly refer to only the "putative father."  Thus, the issue became moot.  See *TM v MZ*, 501 Mich 312, 317 (2018) ("A moot case presents nothing but abstract questions of law which do not rest upon existing facts or rights.  It involves a case in which a judgment cannot have any practical legal effect upon a then existing controversy.") (citations and quotation marks omitted).

something' father under Section 39(2) of the Michigan adoption code." Instead, under the correct standard of review in this case—one that is deferential to the trial court—I believe there is sufficient evidence to support the trial court's ruling.[15]

I believe the record contains sufficient evidence to support the trial court's finding that Brown has "provided substantial and regular support or care *in accordance with the putative father's ability* to provide support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him . . . ." MCL 710.39(2) (emphasis added). Upon learning of the pregnancy, Brown offered the birth mother, along with her daughter from a previous relationship, a place to live, inviting them first to move in with him at his grandmother's house and later into an apartment that they rented together. For a time, Brown supported all three members of the family. Brown obtained medical care for the birth mother's daughter when it was necessary, and even bailed the birth mother out of jail when her bond in a prior criminal matter was revoked. When the birth mother left him, he continued to contact her, attempting to restore their relationship and to care for his unborn child. His efforts ceased, however, when the birth mother threatened him with a personal protection order (PPO). Brown also called Child Protective Services to ensure that the birth mother, and his unborn child, would have medical care.

Overlooking the threatened PPO, the majority faults Brown for failing to continue providing support to the child and birth mother after the child was born. But I do not read MCL 710.39(2) as requiring that a putative father continue to provide support even after being threatened with a PPO.[16] Instead, the statute requires that the putative father

---

[15] I agree with the majority that a trial court's legal determination of whether a putative father is a "do something" father under MCL 710.39(2) should be reviewed for an abuse of discretion. In addition, I believe that the trial court's findings of fact should be reviewed for clear error. See, e.g., MCR 2.613(C) ("Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."); MCR 3.977(K) ("The clearly erroneous standard shall be used in reviewing the court's findings on appeal from an order terminating parental rights."); see also *Kren v Rubin*, 338 Mich 288, 294 (1953) ("We also give deference to the findings of facts by the trial judge due to his opportunity to observe the witnesses and thereby judge their credibility.").

[16] In addition, it is worth noting that, under the statute, the putative father can meet his burden by providing substantial and regular support or care either (1) "for the mother during pregnancy" *or* (2) "for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him . . . ." MCL 710.39(2). Because I believe Brown's efforts during the pregnancy were sufficient, it is not necessary to address his efforts during the latter period.

provide substantial and regular support "in accordance with [his] ability." In this case, Brown clearly provided regular support and care during the pregnancy until the birth mother left him. After that point, Brown attempted to continue to provide support, until he was rebuffed by the birth mother.[17]

---

[17] The partial dissent in the Court of Appeals argued that courts cannot consider the birth mother's interference with the putative father's attempts to provide care. See *In re MGR*, 323 Mich App 279, 298 (2018) (O'BRIEN, J., concurring in part and dissenting in part). The partial dissent acknowledged that the Court of Appeals reached the opposite conclusion in *In re Dawson*, 232 Mich App 690, 694 (1998), but argued that *Dawson* is "obsolete" in light of subsequent amendments of MCL 710.39(2). *In re MGR*, 323 Mich App at 301 (O'BRIEN, J., concurring in part and dissenting in part). In 1998, shortly after *Dawson* was decided, MCL 710.39(2) was amended as follows:

> If the putative father has established a custodial relationship with the child or has provided *substantial and regular* support or care *in accordance with the putative father's ability to provide support or care* for the mother during the pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA. [1998 PA 94 (additions indicated by italics).]

In light of these amendments, the partial dissent contended that courts cannot consider factors such as whether the birth mother rejected offers of support, but that, instead, the "putative father must have actually done something on a regular basis." *In re MGR*, 323 Mich App at 301 (O'BRIEN, J., concurring in part and dissenting in part).

I do not think that the amendment to MCL 710.39(2) supports the dissent's conclusion. Under the statute as amended, "substantial and regular support" is required in the absence of a custodial relationship—but only "in accordance with the putative father's ability to provide support or care . . . ." In my view, consideration of the putative father's ability to provide support or care must include consideration of whether the birth mother impeded his efforts to do so.

In sum, under the circumstances presented in this case, I believe the trial court correctly concluded that Brown was a "do something" father under MCL 710.39(2). Accordingly, I respectfully dissent from the majority's decision to reverse the trial court's determination on this issue as well.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 6, 2019



Clerk

t0605